IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JACK JOSEPH HAMMETT, | § | |
| TDCJ-CID NO. 1183319, | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. G-07-238 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

OPINION ON DISMISSAL

Petitioner Jack Joseph Hammett, a state inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus and an amended petition under 28 U.S.C. § 2254 to challenge his state court felony conviction for manslaughter. (Docket Entries No.1, No.33). Respondent has filed an answer (Docket Entry No.37) to which petitioner has filed a rebuttal. (Docket Entry No.39). After considering all of the pleadings and the entire record, the Court will dismiss this habeas petition for the reasons to follow.

I. BACKGROUND

A jury in the 405th District Court of Galveston County, Texas heard the following evidence, as summarized in pertinent part by the Fourteenth Court of Appeals for the State of Texas:

> On December 5, 2001, Adam Roque ("Roque") was driving a company delivery truck when he experienced a tire blowout. The blowout occurred while he was driving south on the inside lane of Interstate 45, near Highway 518 in League City, Texas. The disabled vehicle required a special wrecker due to its size and weight. Roque did not carry a mobile phone with him and was forced to leave his vehicle unattended while he went to seek assistance. Roque ran across the highway to a nearby place of business to call his employer.

Roque's employer directed him to stay with the disabled vehicle and wait for the wrecker to arrive.  While Roque waited for the wrecker to arrive, he fell asleep in the vehicle.  About two hours later, Jesse Hernandez, the wrecker manager, arrived to provide assistance.  Hernandez also parked his vehicle on the inside shoulder of the highway.  While Hernandez and Roque conversed on the inside shoulder of the highway, a silver Lincoln Continental driven by appellant, Jack Joseph Hammett, struck both Hernandez's and Roque's vehicles and a violent collision occurred.

Roque was thrown several feet into the passing lane of the highway. However, Roque was able to stand up after being thrown and saw Hernandez lying in the road.  Shortly thereafter, the police and emergency technicians arrived.  Appellant was extricated from the Lincoln with the "jaws of life."  Both appellant and Roque were life-flighted to the hospital, while Hernandez was pronounced dead at the scene.

*Hammett v. State*, No.14-04-00769-CR; 2005 WL 3435320 at *1 (Tex. App.--Houston [14th Dist.] 2005, no pet.).  On June 20, 2003, a jury convicted petitioner of manslaughter in cause number 02CR0620-83-2.  *Hammett*, Clerk's Record, page 48.  The state district court assessed punishment at twenty years confinement in TDCJ-CID.  *Id*.

On direct appeal petitioner complained of the following:

1.  The state district court abused its discretion by allowing voir dire questioning to continue even though two panel members, whom petitioner had requested attachment, were missing;

2.  The state district court erred by allowing:

   a.  The prosecutor to state law contrary to the indictment and inject new facts during voir dire, trial, and final argument;

   b.  The prosecutor to claim he represented the victim and the victim's family;

   c.  The jury to be influenced by alleged emotional outbursts of the victim's family members;

   d.  The prosecutor to argue facts allegedly outside the record;

   e.  Sidebar comments from the prosecutor; and,

2

   f. A police officer to testify regarding his opinion as to whether petitioner committed manslaughter; and,

  3. The cumulative effect of all of these errors constitutes reversible error.

*Hammett*, 2005 WL 3435320 at * 1-2.  The Fourteenth Court of Appeals for the State of Texas found that petitioner had either waived or failed to preserve his complaints of trial error regarding the venire persons missing during voir dire, the prosecutor's misstatements of law, the prosecutor's claim to represent the victim and his family, the emotional outburst of complainant's family member, and, sidebar comments from the prosecutor.  *Id*. at *2-10.  The intermediate state appellate court further found that petitioner's remaining claims lacked merit or did not constitute reversible error.  *Id.* at * 7-8, 10, 11.

  Petitioner filed a petition for discretionary review, which the Texas Court of Criminal Appeals struck on April 5, 2006, for non-compliance.  <u>Texas Court website</u>.[1]  The Texas Court of Criminal Appeals gave petitioner additional time to redraw his petition.  (Docket Entries No.1, No.8).  Petitioner, however, requested that his petition be withdrawn.  *See* <u>Letter from petitioner to Court of Criminal Appeals file stamped May 1, 2006</u>.

  Petitioner then sought state habeas relief on the following grounds:

  1. He was denied the effective assistance of counsel on appeal because his appellate counsel filed a frivolous brief raising eight points of error that were either waived, not preserved for appeal, or without merit;

  2. He was denied the effective assistance of counsel at trial because trial counsel

   a. Failed to conduct any pre-trial investigation and to familiarize himself with the applicable law;

---

[1] <u>www.cca.courts.state.tx.us/opinions/EventInfo.asp?EventID=2236037</u>

b.      Allowed the State to introduce false testimony, to mislead the jury and misrepresent the law during voir dire;

c.      Allowed the prosecutor to engage in misconduct;

d.      Failed to quash a defective indictment;

e.      Failed to object to an erroneous jury charge;

f.      Failed to request a charge on a lesser-included offense, and,

g.      Presented a frivolous defense and closing argument.

*Ex parte Hammett*, Application No.WR-58,708-03, page 7.   The Texas Court of Criminal Appeals denied the state habeas application without written order on the findings of the trial court without a hearing on March 14, 2007.  *Id*. at cover.

In the present action, petitioner seeks federal habeas relief on the following grounds:

1.      He was denied the effective assistance of counsel on appeal because counsel

a.      Raised eight claims that had either been waived or had no merit; and,

b.      Failed to raise issues about the ineffective assistance of his trial counsel regarding his failure to request a lesser-included offense instruction and to object to prosecutorial misconduct;

2.      He was denied the effective assistance of counsel at trial because counsel

a.      Failed to quash the defective indictment;

b.      Failed to perform an adequate factual and legal investigation;

c.      Allowed the prosecutor to mislead the voir dire panel and to misrepresent the law during voir dire;

4

       d.      Presented a frivolous defense;

       e.      Waived petitioner's right to testify;

       f.      Failed to object to prosecutorial misconduct; and,

       g.      Failed to request a lesser-included offense instruction and to object to the jury charge for want of such instruction.

(Docket Entries No.1, pages 7, 13, 15-18; No.33, pages 3-15).

Respondent seeks dismissal of this habeas action on grounds that petitioner has failed to exhaust his state remedies with respect to ground 1(b) and that such ground is now procedurally barred, and that petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (Docket Entry No.37).

## II. DISCUSSION

Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause, a federal habeas court may grant relief if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state

court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id.*; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (finding that "[a] state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent'").

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (stating that "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold"); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) (noting that "it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, (2004) (stating that "[w]e look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Section 2254(d)(2) of Title 28, United States Code provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, --- U.S. ----, 130 S.Ct. 841, 849 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood*, --- U.S. at ----, 130 S.Ct. at 849; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, Section 2254(e)(1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence the state court's findings were erroneous. *Schriro*, 550 U.S. at 473-74 (noting that "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence'"); 28 U.S.C. § 2254(e)(1). It remains unclear at this time whether Section 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under Section 2254(d) (2). *See Wood*, --- U.S. at ----, 130 S.Ct. at 849 (choosing not to resolve the issue of Section 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of Section 2254(e)(1)). However, the deference to which state-

7

court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (stating that "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief").

A federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision.  *See St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006) (holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision).

### A. Procedural Bar

Respondent maintains that petitioner's claim that his appellate counsel rendered constitutionally ineffective assistance by failing to raise on direct appeal issues regarding the ineffectiveness of trial counsel is unexhausted and procedurally barred.

Under 28 U.S.C. § 2254, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."  *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).  The doctrine of exhaustion, codified as amended at 28 U.S.C. § 2254(b)(1) and (c), reflects a policy of federal/state comity.  *Coleman v. Thompson*, 501 U.S. 722 (1991).  A claim is exhausted when a habeas petitioner provides the highest state court with a "'fair opportunity to pass upon the claim,' which in turn requires that the applicant 'present his claims before the state courts in a procedurally proper manner according to the rules of the state courts.'"  *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (quoting *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.

1988)).  The substance of a federal claim is deemed "fairly presented" in state court for purposes of the exhaustion doctrine only if the petitioner relies upon identical facts and legal theories in both of the state court proceeding and the action for federal habeas relief.  *Picard v. Connor*, 404 U.S. 270, 275-75 (1971); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

Petitioner did not challenge in his state habeas application the failure of his appellate counsel to challenge his trial counsel's deficiencies on direct appeal; therefore, petitioner did not exhaust such claim in state court before bringing it in the pending federal petition.  Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed, allowing the petitioner to return to the state forum to present his unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509 (1982).  Respondent, however, contends such a result in this case would be futile because petitioner's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law.  (Docket Entry No.37).

On habeas review, a federal court may not consider a state inmate's claim if the state court based its rejection of that claim on an independent and adequate state ground.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).  A procedural bar for federal habeas review also occurs if the court, to which a petitioner must present his claims to satisfy the exhaustion requirement, would now find the unexhausted claims procedurally barred.  *Coleman,* 501 U.S. at 735 n.1.

Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a) (Vernon 2005).  The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent

habeas application unless the application contains sufficient specific facts establishing the following:

>    (1)    the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
>    (2)    by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.* The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner's federal habeas petitions do not contain specific facts to establish this ineffective assistance of appellate counsel claim in the pending habeas action could not have been raised in his state habeas petition or that he is innocent. Therefore, petitioner's unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court. *Coleman*, 501 U.S. at 735 n.1. Such a bar precludes this Court from reviewing petitioner's claim absent a showing of cause for the default and actual prejudice attributable to the default. *Id.* at 750.

Petitioner has been given notice through respondent's motion for summary judgment that the Court would consider a dismissal of claims under the procedural default doctrine and has been given an opportunity to respond with any argument he may have opposing dismissal in a response to the motion for summary judgment. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998). Petitioner, however, fails to address the default, the cause of the default, or prejudice resulting from the default in his response to the motion for summary

judgment.  (Docket Entry No.39).  Accordingly, the Court will dismiss as procedurally barred petitioner's claim that his appellate counsel rendered ineffective assistance on appeal by failing to challenge his trial counsel's representation.

<u>B. Appellate Counsel</u>

Petitioner contends that he was denied the effective assistance of counsel on appeal because his appellate counsel raised issues that were waived, unpreserved, or frivolous. (Docket Entry No.1, page 14).  Petitioner further contends that appellate counsel failed to raise issues regarding the ineffectiveness of trial counsel, the omission of a lesser-included offense charge, and prosecutorial misconduct, which forced petitioner to raise the same issues in his state habeas application.  (*Id.*).

The state habeas courts found that petitioner did not meet his burden of proving that he received ineffective assistance of appellate counsel.  *Ex parte Hammett*, No.WR-58,708-03, page 177.  Respondent maintains that petitioner's claim that his appellate counsel was ineffective is conclusory and therefore, subject to dismissal.  (Docket Entry No.37, page 14).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Robbins*, 528 U.S. 259, 286 (2000).  Therefore, petitioner must demonstrate that the representation of his appellate counsel was deficient and that such deficiency prejudiced his case. *Strickland*, 466 U.S. at 687.  Because an appellate counsel is not required to raise every

11

nonfrivolous claim on appeal, but may select from among them in order to maximize the likelihood of success on appeal, it is difficult to demonstrate the incompetency of counsel when a brief on the merits is filed.  *Smith*, 528 U.S. at 288.  The presumption of competency is overcome "'only when ignored issues are clearly stronger than those presented.'"  *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable."  *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).  When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-75.

In this case, petitioner fails to show that the ignored issues, *i.e.*, the ineffectiveness of trial counsel, the omission of a lesser-included offense instruction in the charge, and prosecutorial misconduct, were stronger than those raised on appeal or that he was prejudiced by his appellate counsel's failure to raise the same.  Petitioner concedes that he raised such issues in his state habeas application and the Texas courts found against him.  Therefore, he cannot show these issues were stronger than those appealed or that he would have enjoyed a different outcome if his appellate attorney had adequately addressed the issues on appeal.

Moreover, his complaint that his appellate counsel was ineffective for raising the issues presented is conclusory.  Petitioner states no facts in support of this complaint.  "Mere conclusory statements do not raise a constitutional issue in a habeas case."  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

Accordingly, petitioner's claim that he was denied the effective assistance of counsel on appeal is subject to dismissal.

### C. Trial Counsel

Respondent maintains that petitioner has failed to demonstrate that he was denied the effective assistance of counsel at trial.  (Docket Entry No.37).  The state habeas courts generally found that petitioner did not met his burden of proving that he received ineffective assistance of trial counsel relating to any of the matters raised in his state habeas application.  *Ex parte Hammett*, Application No.WR-58,708-03, page 177.  The state habeas courts also entered specific findings with respect to each claim.

To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial

13

strategy." *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair."  *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decisions on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

### 1. Quash Indictment

Petitioner claims his trial counsel rendered ineffective assistance because he did not object to or move to quash the indictment, which failed to give him notice of a material element of the offense, *i.e.,* "**how exactly** he killed the decedent."  (Docket Entry No.1, page 17, emphasis in original).  Petitioner acknowledges that the indictment alleged that he caused the death by driving recklessly at a high rate of speed on the shoulder of the highway, but he claims it should have stated that he struck complainant's truck at a high rate of speed, pinning complainant between two trucks, which caused his death.  (*Id.*).  The state habeas courts found that petitioner failed to show that his trial counsel was ineffective "for not objecting to a proper indictment."  *Ex parte Hammett*, Application No.WR,58,708-03, page 178.

The standard for determining the sufficiency of an indictment is based upon practical, not technical considerations.  *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir. 1992).  The test involves minimal constitutional standards, not whether a better indictment could have been written.  *Id*.  The essential elements of the offense, including knowledge or intent, must be included in the indictment but need not be expressed in any specific terms.  *United States v. Arteaga-Limones*, 529 F.2d 1183, 1199 (5th Cir. 1976).  The "plain and sensible meaning of the language used" may give the defendant notice sufficient to meet the requirements of the Sixth Amendment.  *United States v. Haas*, 583 F.2d 216, 220 (5th Cir. 1978).

As a general rule in Texas, the State is not required to plead evidentiary facts.  *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998).  Unless a fact is essential to notice, the indictment need not plead evidence relied upon by the State.  *Livingston v. State*, 739 S.W.2d 311, 321 (Tex. Crim .App. 1987).  The State, however, must plead with reasonable certainty the

acts or circumstances on which the State will rely to prove the forbidden conduct was committed recklessly or with criminal negligence.  TEX. CODE CRIM. PROC. ANN. art. 21.15 (Vernon 2009).

The indictment in this case charged that petitioner "did then and there recklessly cause the death of an individual, Jesse Hernandez, by driving and operating a motor vehicle at a high rate of speed and by driving said vehicle on the shoulder of the road."  *Hammett*, Clerk's Record, page 2.  Petitioner fails to show that the language of the indictment does not comport with Texas law or that the State did not plead with reasonable certainty the acts or circumstances upon which it intended to prove that he committed manslaughter.  Moreover, petitioner fails to show that the state district court would have granted a motion to quash the indictment based on his objection that the indictment did not specifically state the actual means by which petitioner killed complainant.  An attorney is "not required by the Sixth Amendment to file meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).  An attorney does not render deficient performance by failing to move to quash a valid indictment.

Petitioner fails to meet his burden under the AEDPA.

2. Failure to Investigate, Defend & Request Jury Instruction on Criminal Negligence

Underlying many of petitioner's complaints about his trial counsel's representation is petitioner's claim that his actions were not reckless but negligent.

A person commits manslaughter in Texas "if he recklessly causes the death of an individual."  TEX. PEN. CODE ANN. § 19.04(a) (Vernon 2003).  "A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the . . . result will occur." *Schroeder v. State*,

16

123 S.W.3d 398, 400-01 (Tex. Crim. App. 2003). The jury in this case was instructed accordingly. *Hammett*, Clerk's Record, page 42.

A person commits criminally negligent homicide if he causes the death of another by criminal negligence. TEX. PEN. CODE ANN. § 19.05(a) (Vernon 2003). Criminal negligence occurs when the actor ought to be aware of a substantial and unjustifiable risk that the result will occur. *Id.*, § 6.03(d). The offense of criminally negligent homicide "involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof [but fails] to perceive the risk." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2006).

At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk. *Lugo v. State*, 667 S.W.2d 144, 147-48 (Tex. Crim. App. 1984).

Texas case law provides that mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). Whether the actor is aware of the requisite risk is a conclusion to be reached by the trier of fact from all the evidence and the inferences drawn therefrom. *See In re E.U.M.*, 108 S.W.3d 368, 370 (Tex. App.-Beaumont 2003, no pet.). "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon*, 574 S.W.2d at 95.

### a. Legal and Factual Investigation of the Case

Petitioner claims in the present action that his trial counsel did not conduct an adequate investigation of the law regarding the mental state of recklessness, which he alleges was the primary issue at trial, and did not attempt to uncover facts or witnesses to support petitioner's claim that he did not have the mental state to commit manslaughter.  (Docket Entry No.33, pages 5-7).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  Any decision by counsel not to investigate is assessed for reasonableness under all the circumstances, with a heavy measure of deference to counsel's judgment.  *Id*.  "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time."  *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (internal quotation marks and citations omitted). The reasonableness of an investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further."  *Id.* at 527.

Petitioner contends in this action that if counsel had conducted an adequate legal investigation regarding the mental states of recklessness and negligence and applied the law to the facts that petitioner conveyed to him, counsel would have defended against the manslaughter charge by presenting evidence of criminal negligence via petitioner's testimony and further

developed the testimony of State's witness Bill Dickerson.[2]   (Docket Entry No.33, pages 5-9).   In

his state habeas application, however, petitioner argued that the State's case was framed around

testimony about his erratic and reckless driving on the shoulder and complained that counsel did

not interview the State's witnesses prior to trial or to attempt to locate other possible witnesses,

presumably who would refute the testimony of the State's witnesses.   *Ex parte Hammett*,

Application No.WR-58,708-03, pages 15-16.   He complained that trial counsel did not attempt to

obtain film or video from traffic cameras in the area to refute testimony of his erratic driving or

an audio copy of the 911 call from eyewitness Steven Canales.[3]   *Id*.   Petitioner further

complained that trial counsel did not obtain a copy of the full autopsy report or enlist the services

of an expert to refute the manner in which complainant died.   *Id.*

          After reviewing trial counsel's amended affidavit,[4] the state habeas courts found

that petitioner's trial counsel conducted a reasonable pretrial investigation.   *Ex parte Hammett*,

Application No.WR,58,708-03, page 177.   The state courts specifically found that counsel

attempted to contact four state witnesses, but none of them chose to respond to counsel.   *Id*.   The

state courts found that petitioner did not secure counsel's services until a year after the accident;

therefore, counsel's belief that no other witnesses were available beyond those in the accident

report and those noted in the State's file was reasonable trial strategy.   *Id.*

---

[2] Petitioner claims that Dickerson testified that he saw petitioner looking in petitioner's rearview mirror before the crash, which petitioner claims is evidence that he did not see the vehicle on the shoulder.  (Docket Entry No.33, page 8).

[3] Canales testified that he followed petitioner's vehicle for approximately five miles from the Beltway to FM 518 and observed the vehicle driving on and off the inside shoulder near the concrete barrier.  Thinking that the driver was intoxicated, he called 911 and was still talking to the dispatcher when he saw a vehicle on the same shoulder as he crested the overpass near 518.  Canales told the dispatcher that there was going to be an accident.  He testified that petitioner did not brake as he approached the vehicle on the inside shoulder at a speed of around 65 to 70 miles per hour.  *Hammett*, Reporter's Record, Volume IV, pages 130-134.

[4] *See Ex parte Hammett*, No.WR-58,708-03, page 174.

The state courts further found that petitioner did not inform trial counsel that he should attempt to obtain video or photographic evidence depicting how petitioner drove the day of the accident.  *Id.*, page 178.  The state courts found reasonable trial counsel's belief that such evidence would have harmed petitioner because it would have corroborated the witnesses's testimony.  *Id.*  The state courts also found that trial counsel listened to the 911 tape and reasonably decided not to introduce the tape because it corroborated the statement of state witness Canales.  *Id.*

Petitioner presents no evidence and states no facts to show to show that the state habeas court's findings were contrary to, or an unreasonable application of federal law with respect to counsel's representation under these circumstances.

With respect to the claims petitioner alleges in the present habeas action, the Court finds such claims are without support in the record.  Petitioner claims that had counsel investigated the mental state of negligence, he would have understood that petitioner was not conscious of the risk to complainant and therefore, allowed petitioner to testify as he did at the punishment hearing, *i.e.,* that he did not see the vehicle.  *Hammett*, Reporter's Record, Volume 7, pages 17, 22.  Petitioner's full testimony at the punishment hearing, however, reflects a conscious disregard of the risk created by his conduct.  Petitioner testified that he took the path of least resistance, which he should not have done, that he was passing traffic on the shoulder that day, that it is reckless to drive on the shoulder and pass traffic on I-45, and that his recklessness caused complainant's death.  *Hammett*, Reporter's Record Volume 7, pages 17-18.

Petitioner also implies that his trial counsel should have further investigated statements given by witness Bill Dickerson.  Petitioner contends that Dickerson's testimony at

trial shows that petitioner did not see complainant's truck on the shoulder.  (Docket Entry No.33, page 8).  Petitioner claims that Dickerson testified that he saw that petitioner "was looking back" at the time of the accident.  (Docket Entry No.39, page 5).

Petitioner misstates the record.  Dickerson testified that he had already passed the two vehicles on the shoulder when he saw a car coming up beside his vehicle and observed the driver looking in his rearview mirror.  He did not state from which lane the car was approaching him and he did not identify petitioner as the driver of the vehicle that was coming up beside him or the driver of the vehicle he saw careening across the freeway when he looked back into his rearview mirror a second time.[5]  *Hammett*, Reporter's Record, Volume V, pages 7-8.

Moreover, a review of trial counsel's cross-examination of the State's witnesses reflects that trial counsel conducted some pretrial investigation with respect to the autopsy report, the criminal record of complainant, the safety measures that were not employed by the complainant and the truck driver, and the police investigation.  Aside from petitioner's own self-serving statement and his misstatement of witness Dickerson's testimony, petitioner proffers nothing in this habeas action to show that his trial counsel did not conduct a reasonable pretrial investigation of the facts and law in this case.

Therefore, such claim is subject to dismissal.

---

[5] Dickerson testified that as he approached the peak of the overpass on the I-45 freeway, he saw tire debris in the center lane where he was driving; he moved to the left lane to avoid it.  He did not see any vehicles traveling on the shoulder to avoid the debris.  When he reached the peak of the overpass, he saw two vehicles parked close together on the left shoulder or the emergency lane next to the guardrail or concrete barrier.  He was in the left lane as he passed the two vehicles.  Thereafter, he moved over into the center lane and glanced in his rearview mirror.  He did not see anything.  Another car came up beside him and he was unsure if the car was pulling over.  He noticed that the driver of that car was also looking back, so he started to move over.  He looked into his rearview mirror and saw an explosion, dust and debris, and a car cross the freeway from his left to the right.  He presumed the car had hit the vehicles on the shoulder.  He did not see or know who was driving the car careening across the road.  *Hammett*, Reporter's Record, Volume V, pages 8-13.

b. Frivolous Defense

Petitioner contends his trial counsel's performance was deficient because counsel pursued a defense based on the identity of petitioner, as the driver of the automobile that crashed into the complainant's vehicle.  (Docket Entries No.1, pages 15-16; No.33, page 6; No.39, pages).  Petitioner claims that his identity was never in question because he also suffered severe injuries as a result of the crash and had to be extracted from his car.  (Docket Entry No.1, page 16).  He also claims that "the facts and law that counsel relied on were not even relevant facts and law to this case."  (Docket Entry No.33, page 6).  Petitioner claims that he was not driving recklessly and that he did not intend the accident to happen; therefore, his trial counsel should have pursued a defense of criminal negligence and allowed him to testify to the same.  (Docket Entry No.1, page 16).  Petitioner further contends that because some of the State's witnesses were eyewitnesses to the accident, the only viable defense was a challenge to petitioner's mental culpability, and not his identity.  (Docket Entry No.33, page 6).

Petitioner's "desire to have a specific defense theory presented does not amount to ineffective assistance of counsel on federal habeas review."  *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007).  The court must review a trial counsel's performance from his perspective at the time of trial, not from the advantage of hindsight.  *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).  Moreover, strategic decisions at trial are afforded great deference.  *Id.* at 1172.  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005).  "Given the almost infinite variety of possible trial techniques and tactics available to counsel,

22

this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985

F.2d 222, 228 (5th Cir. 1993).

   In his First Amended Affidavit, Attorney Mike O'Donnell, petitioner's trial

counsel, attested about the defense he pursued, as follows, in pertinent part:

> Further, I believe that if the Jury felt that State had over-charged Applicant
> for what it felt was merely a tragic car accident, it might have found it too
> hard to convict him of manslaughter rather than something less than that,
> *i.e.,* nullified the State's position.

>   *   *   *   *   *   *

> Given the evidence and Applicant's prior felony conviction record, I
> considered a plea bargain (Applicant rejected) or jury trial based on either:
> a) victim should not have been on emergency shoulder (rejected because
> victim sympathetic and trying to help someone in trouble); or b) State
> can't produce a living witness who can say they SAW defendant
> physically driving car, or in a position from which such conduct could be
> inferred.   (State failed to call Firefighters that pulled Applicant from
> wreckage).  I tried at least one case as a Harris County Prosecutor that was
> dismissed because I could not prove who was driving in a DWI injury
> accident.

> I NEVER CONSIDERED SUING SHERWIN WILLIAMS—NO BASIS
> FOR MY CLIENT TO PREVAIL.  However, I saw three potential "bad
> guys" in the Courtroom during trial:  a) Applicant (obviously want Jury to
> look away from Applicant; b) Victim-Decedent (again, although Victim
> had long felony conviction record, he was the "good guy" the day he was
> hit, so hard to attack him); and c) Sherwin-Williams, the "Big, Cold,
> Heartless Corporation" that failed to maintain its equipment (bad tires on
> truck) and took hours to get help to the worker it stranded (wanted to show
> Jury and Victim's family in the courtroom that only Sherwin Williams
> could help ease the pain, emotional and financial, caused by accident).

>   *   *   *   *   *   *

> I had no interest in, or basis for, suing Sherwin Williams beyond my
> desire to deflect guilt from Applicant to Sherwin Williams.

*Ex parte Hammett*, Application No.WR-58,708-03, pages 174-75.

The record shows that trial counsel employed all of defenses, to which he attested to in state proceedings.  He told the jury in opening remarks that a minor traffic offense had occurred with tragic results, in part, because complainant's vehicle was illegally parked on the shoulder without warning devices and that the State had assumed the accident was alcohol related and had not conducted an adequate investigation.  *Hammett*, Reporter's Record, Volume IV, pages 11-12.  He also told jurors that petitioner "was Life-Flighted to Hermann Hospital." *Id.*, page 11.

During trial, counsel employed the tragic accident defense by deflecting blame from petitioner in his cross-examination of the State's first three witnesses.  Counsel pressed complainant's sister to admit that complainant had several convictions for driving while intoxicated and had recently completed probation for a felony conviction in Harris County.  *Id.*, page 22.  He elicited testimony from the medical examiner that the manner of complainant's death had been ruled an accident.  *Id.*, page 42.  He vigorously cross-examined the truck driver whose tire had blown out on the freeway as to why he had parked on the left shoulder of the freeway, why his employer Sherwin Williams had not provided him with a phone, radio, or partner, and why he crossed several lanes of traffic to call for help and then crossed again to return to his truck.  *Id.*, pages 74-78.  Counsel also questioned the truck driver about the lack of warning devices.  *Id.*, pages 78, 80, 82, 83.  He even elicited testimony that complainant had told the driver that he could not change his tire while he was parked on the shoulder because it was not safe.  *Id.*, page 81.

This defense proved more tenuous when the State's next four witnesses testified that before the accident they had observed a white male driving a Lincoln Town Car erratically

and unsafely at speeds of sixty-five to seventy miles an hour for several miles on the left-hand shoulder of the freeway next to the concrete barrier.[6]  *Id.*, pages 93-95, 120-25; 131-33, 142.  All four testified that the vehicle was traveling on the left shoulder as it approached the crest of the overpass and continued on the shoulder until it collided with the vehicle parked on the shoulder of the road on the other side of the overpass.  *Id.*, pages 100-101; 125-126, 133-134, 143.  Only one of these witnesses identified petitioner as the driver of the Lincoln Town Car.  Witness Stephen Canales testified that "[w]hoever was driving that particular vehicle is here in the courtroom was the one that did that particular accident."  *Id.* at 134.   Bill Dickerson then testified that he observed an explosion and a car spinning across the freeway after he passed the two parked vehicles on the left shoulder of the freeway; he did not see and could not identify the driver of the car careening across the freeway.  *Id.*, Volume V at 12.

---

[6] John Norgan, Jr. testified that he saw the car pull over onto the left-hand shoulder three times and the third time, he saw the brake lights come on just before he hit complainant's truck.  *Hammett v. State*, No.14-04-00769-CR, Reporter's Record, Volume IV, page 98.  Norgan testified that the driver of the car was attempting to pass another vehicle when he moved to the shoulder and struck the truck.  *Id.*, pages 100-01.  Norgan described the driver as a white male in his fifties with some gray hair.  *Id.*, pages 95-96.  He identified petitioner's trial counsel as the driver of the vehicle.  *Id.*, page 103.

Richard Dennis Rygaard testified that when the driver of the Town Car would move to the shoulder to pass vehicles, he would speed up and fly around the car and go down the left lane until he was slowed by other traffic.  *Id.*, pages121-22.  He testified that he observed the Town Car in the left-hand shoulder lane passing another vehicle as the vehicles approached the top of the overpass and that the Town Car was kicking up dust and debris; when he approached the top of the overpass, he saw all the vehicles thrown everywhere.  *Id.*, pages 125-26.  Rygaard did not get a good look at the driver.  *Id.*, page 127.

Steven Canales testified that he observed the Town Car driving very erratically, swerving, and driving on the inside shoulder of the expressway near the concrete barrier for quite some time.  *Id.*, page 131.  He dialed 911 to report what he thought was an intoxicated driver.  *Id.*  Canales testified that he saw the driver continue on the inside shoulder up and over the incline of the overpass.  *Id.*, page 133.  Canales saw complainant's vehicle at the base of the incline and told the dispatcher that there was going to be an accident.  *Id.*  Canales testified, "And this vehicle was probably driving probably about three-quarters of a mile or maybe like half a mile or so on the shoulder with no regards and just plowed into this parked truck and--"  *Id.*  Canales did not see a brake light.  *Id.*, page 134.

Glen Brizendine testified that he first saw the vehicle swerve towards the middle and pass a vehicle on the left shoulder next to the concrete barrier.  *Id.*, page 141.  He later saw the vehicle pass a couple more cars on the left-hand shoulder two more times.  *Id.*  When he came to the top of the overpass, he saw the crash site.  *Id.*, page 143.

Following these witnesses, the State questioned the investigating police officer, who affirmatively identified petitioner as the driver of the Lincoln Town Car. *Id.*, Volume V, page 20, 27. The officer also testified that he believed that petitioner had engaged in criminal activity because of the manner in which he was operating the vehicle, that passing slower traffic on the shoulder and at sixty-five to seventy miles an hour violated State traffic laws and constituted "a gross deviation from the ordinary standard of care." *Id.*, pages 21, 28. The officer attested that his investigation showed that petitioner had committed manslaughter by the reckless manner in which petitioner drove his automobile. *Id.* pages 30-31.

On cross-examination, trial counsel again attempted to deflect blame from petitioner by questioning the officer about his investigation of the accident. He queried whether the officer observed petitioner driving the vehicle, whether he observed debris in the road, whether emergency personnel or others had moved anything, whether there were other factors that might have caused the accident, and whether the officer had a clear identification of the driver. *Id.*, pages 33-39. Trial counsel also questioned why the officer had not stated in his offense report how he had identified petitioner as the driver. *Id.*, page 43. He questioned him about petitioner's appearance in the vehicle, at the hospital, in court, and in photographs of the accident. *Id.*, pages 44-47. The State rested without presenting testimony from the person who removed petitioner from his vehicle on the day of the accident and petitioner's trial counsel moved for a directed verdict on the ground that the State had not proven that petitioner was the driver of the vehicle in question on the date of the accident. *Id.*, page 51. The motion was denied. *Id.*

26

In closing argument, trial counsel again pursued the tragic accident defense by arguing that the State had misled the jury and that the evidence showed that complainant's death was accidental and not solely attributable to petitioner's conduct.   He pointed out that complainant had not followed state law, that the medical examiner ruled the death an accident, that Sherwin Williams did not care enough about its employee to provide him with proper equipment or rescue him from the situation, that the eyewitnesses to the accident could not identify the driver of the vehicle, and that the investigating officer left out the identification evidence in his offense report.   Trial counsel made a few disparaging remarks about Sherwin Williams and closed with a statement that the investigating officer should tell the jury why "Sherwin Williams shouldn't pay for this mess."  *Id*., pages 64-77.

The state habeas courts found that trial counsel's defense constituted reasonable trial strategy, as follows, in pertinent part:

> Applicant has failed to show that trial counsel was ineffective for not providing any defense.   Trial counsel did consider several defense strategies.   Counsel suggested a plea bargain to Applicant.   Applicant rejected the suggestion.   Counsel's strategy to show that the State had not met its burden of proving all of the elements of the offense was reasonable.

> Trial counsel did not base his trial strategy on a future law suit against the Sherwin Williams Company.   It was reasonable trial strategy to shift the blame to Sherwin Williams and away from Applicant.

*Ex parte Hammett*, Application No.WR-58,708-03, page 179.   The Texas Court of Criminal Appeals subsequently relied on these findings in denying habeas relief.

Arguably, a single defense based on petitioner's identity as the driver may constitute deficient performance in this case because his identity was not at issue given the fact that jurors knew he had been in the accident and had been taken to the hospital.   The record,

27

however, reflects that counsel's defense, *i.e.*, petitioner was involved in a tragic accident not solely attributable to his conduct and this case should not be tried in a criminal court, was not deficient but a reasonable trial strategy supported by the evidence presented by the State. Given the failure of eyewitnesses to identify petitioner as the driver and the State's failure to produce the witness who extricated petitioner from his car, counsel's defense that the State had failed to prove petitioner's identity was not unreasonable in the context of this trial. Based on this record, the Court finds that petitioner has not shown that trial counsel's defense was so ill chosen that it permeated the entire trial with obvious unfairness. He therefore, fails to overcome the state habeas courts' adjudication of this claim under the AEDPA.

<u>c. Right to Testify</u>

Petitioner claims in his original complaint that his trial counsel overruled his request to testify during the guilt-innocence phase of trial. (Docket Entry No.1, page 16). In his Amended Complaint, petitioner alleges that he unconstitutionally waived his right to testify during the guilt-innocence phase of trial on the erroneous advice of trial counsel. (Docket Entry No.33, page 6). Petitioner claims he suffered prejudice as a result of counsel's deficient advice because jurors did not hear the testimony that he gave at the punishment hearing of trial, which raised the issue of criminal negligence. (Docket Entry No.33, pages 5, 7). Respondent maintains that trial counsel had a sound trial strategy for his advice, which petitioner acknowledged was his lengthy criminal record. (Docket Entry No.37, page 25).

"The right to testify is a fundamental right . . . that is personal to the defendant; therefore, only the defendant can waive that right, voluntarily and knowingly." *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007) (internal citations omitted). "A defendant who

argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*." *United States v. Harris*, 408 F.3d 186, 192 (5th Cir. 2005). The Fifth Circuit "has repeatedly held there is 'a strong presumption that counsel's decision not to place [a defendant] on the stand was sound trial strategy.'" *Bower,* 497 F.3d at 473 quoting *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Trial counsel, however, "cannot override the ultimate decision of a defendant who wishes to testify contrary to counsel's advice." *Id.*

Petitioner states in his Amended Complaint in the present proceeding that in *pre-trial conversations,* he told counsel that he wanted to testify to tell the jury his perspective of the incident but trial counsel advised him not to testify because the prosecution would impeach him with his prior convictions. (Docket Entry No.33, page 5) (emphasis added). Petitioner claims that because his trial counsel did not file a motion requesting notice of the State's intent to admit evidence of his prior conviction, his counsel's pre-trial advice to forgo testifying was erroneous. (*Id.*). Petitioner further claims that he talked with his trial counsel *on numerous occasions* about his right to testify and his desire to "tell the judge my prospective [sic] of the accident." (*Id.*, page 9) (emphasis added).

However, in his "Declaration" filed in his Rebuttal to respondent's answer, petitioner claims, without supporting facts, that he "did not knowingly and intentionally relinquish his right to testify." (Docket Entry No.39, page 8). Contrary to the factual allegations in his Amended Complaint, petitioner also declares that he "did not understand the nature of my right to testify and the consequences of abandoning it." (*Id.*).

In his Memorandum in support of his state habeas application, petitioner alleged that he repeatedly told trial counsel that he wanted to testify so the jury could hear from him

what happened but trial counsel chose to maintain silence.  *Ex parte Hammett*, Application No.WR-58,708-03, page 18.  In his "Declaration" filed in state habeas proceedings, petitioner indicated that he told counsel *after the State rested* that he wanted to testify so the jury could hear his side of the story, but counsel refused.  *Id.*, pages 51-52 (emphasis added).  Petitioner stated that counsel told him that the State failed to prove that he was driving the Lincoln that day and it was not necessary for him to testify.  *Id.*, page 51.  Petitioner argued with counsel that if he did not testify that the jury would find him guilty of manslaughter but trial counsel responded that there would be no charge of involuntary manslaughter or criminally negligent homicide; the jury would have to find him guilty of manslaughter or nothing at all.  *Id.*

Trial counsel attested by affidavit in state habeas proceedings that he was aware of petitioner's criminal history and that petitioner was fortunate that the State had not enhanced the present offense to habitual status.  *Id.*, page 175.  Counsel further attested that he advised petitioner not to testify and petitioner chose not to testify during the guilt-innocence phase of trial.  *Id.*

The state habeas courts entered a finding that counsel was aware of petitioner's criminal history and explained to petitioner the potential ramifications of such history.  *Id.*, page 179.  The state habeas courts further found that counsel advised petitioner not to testify because of his criminal record and petitioner chose not to testify.  *Id*.

Although petitioner alleges that his waiver was involuntary and unknowing in his "Rebuttal to State's Answer" (Docket Entry No.39), his pleadings and exhibits filed in both in state and federal court reflect a knowing waiver of his right to testify on counsel's advice.  The record also reflects petitioner's lengthy criminal history that includes numerous driving offenses,

*i.e.* two convictions for driving while intoxicated and one for driving with his license suspended, and several drug offenses. *Hammett*, Reporter's Record, Volume VII, pages 18, 20, 24, 27-28. In light of such record, trial counsel's advice to petitioner not to testify during the guilt-innocence phase of a trial in which he was charged with yet another driving offense was not ineffective assistance of counsel, but a matter of reasonable trial strategy.

Even if trial counsel's advice was not sound and petitioner did not knowingly waive his right, petitioner cannot demonstrate that he was subsequently prejudiced. As previously discussed, petitioner's testimony at the punishment hearing does not support his claim that his conduct was negligent and not reckless. *Hammett*, Reporter's Record, Volume 7, pages 17-18. His argument that he did not see complainant and therefore, could not have been consciously aware that driving on the shoulder would cause complainant's death is flawed. A defendant need not be aware of the specific risk of another's death in order to commit manslaughter.[7] *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex.App.-Austin 1997, pet. ref'd).

Accordingly, petitioner fails to rebut the state habeas court's findings and to meet his burden under the AEDPA.

---

[7] *Cf. Miller v. State*, No.03-07-00527, 2010 WL 140390 at *5 Tex. App.—Austin 2010, pet. stricken) (finding sufficient evidence of recklessness where on a narrow improved shoulder of highway at forty-five miles an hour; petitioner passed vehicles stopped behind a school bus with lights flashing and struck a twelve-year old child with his truck causing the child's death and citing to *In Manning v. State,* 84 S.W.3d 15, 20-21 (Tex.App.-Texarkana 2002), *rev'd on other grounds*, 114 S.W.3d 922 (Tex. Crim. App. 2003) (finding sufficient evidence of recklessness where the defendant never applied his brakes, slowed down, or swerved when approaching a lane of stopped traffic with visible warning signs of road construction); *Arellano v. State*, 54 S.W.3d 391, 393 (Tex.App.-Waco 2001, pet. ref'd) (sufficient evidence of recklessness where visible signs of reduced speed and skid marks showed excessive speed); *Trepanier v. State,* 940 S.W.2d 827, 830 (Tex. App.—Austin, 1997, pet. ref'd) (sufficient evidence of recklessness where driver moved onto shoulder to pass on the right); *Lopez v. State*, 731 S.W.2d 682, 684 (Tex.App.-Houston [1st Dist.] 1987), *rev'd on other grounds*, 779 S.W.2d 411 (Tex. Crim. App. 1989) (sufficient evidence of recklessness where defendant struck a pedestrian and a truck parked on the shoulder after failing to maintain a single lane on the road); *Bannister v. State*, 761 S.W.2d 849, 850 (Tex.App.-Beaumont 1988, no pet.) (sufficient evidence of recklessness where truck driver in a heavy fog reversed his truck on the highway and was struck by a driver proceeding legally in the same lane); *Aliff v. State*, 627 S.W.2d 166, 172 (Tex. Crim. App. 1982) (evidence sufficient to show recklessness where defendant operated motor vehicle at over 100 miles per hour, passed a car on the shoulder, locked his brakes, and skidded into a collision with another car)).

<u>d. Lesser-Included Offense Instruction</u>

Petitioner claims that he was denied the effective assistance of counsel because trial counsel did not request and did not object to the omission of a lesser-included offense instruction in the jury charge.   (Docket Entry No.33, page 10).   Petitioner claims that his testimony and the testimony of Bill Dickerson, *i.e.*, the driver of the car pulling up beside him was looking in his rear view mirror, support the inclusion of a lesser-included charge of criminal negligence.  (*Id*.).

Trial counsel attested in state habeas proceedings to the following, in pertinent part:

> Further, Application said he had done nothing wrong and did not want to be found guilty of anything, including a lesser-included charge.  Further, I believe that if the Jury felt that State had over-charged Applicant for what it felt was merely a tragic car accident, it might have found it too hard to convict him of manslaughter rather than something less than that, *i.e.*, nullified the State's position.

*Ex parte Hammett*, Application No.WR-58,708-03, page 174.

The state habeas courts found that petitioner "informed trial counsel that he did not want to be found guilty of anything, including a lesser-included offense.  It was reasonable trial strategy for counsel not to request a lesser-included offense, when counsel attempted to show the jury that the accident was a tragedy, but was not manslaughter."  *Id.,* page 178.  The state habeas courts also found that petitioner failed to show that trial counsel was ineffective for not objecting to the jury charge.  *Id*.

To be entitled to a lesser-included offense instruction in Texas requires that the lesser-included offense be within the proof necessary to establish the offense charged and some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense.

32

*Richards v. Quarterman*, 566 F.3d 553, 568-69 (5th Cir. 2009).  A decision not to seek an instruction on a lesser-included offense may be the result of a reasonable trial strategy.  *U.S. v. Gonzales*, 189 F.3d 469, n. 1 (5th Cir. 1999) (not designated for publication).

In Texas, criminal negligence is a lesser-included offense of manslaughter.  *Aliff v. State*, 627 S.W.2d 166, 171 (Tex. Crim. App. 1982).  The record, however, reflects no evidence of criminal negligence; petitioner did not testify during the guilt-innocence phase of trial and the evidence he directs the Court to consider as evidence of his negligence, *i.e*., his testimony at the punishment hearing and the testimony of Bill Dickerson, does not support his claim.  The record, as previously discussed, shows that trial counsel's defensive strategy was that the collision was a tragic accident with multiple causes and not solely attributable to petitioner's conduct.  Defense counsel cannot have been deficient in not requesting a criminal negligence instruction to which petitioner was not entitled; nor can petitioner demonstrate prejudice as no instruction on criminal negligence would have been appropriate even if requested.  Petitioner has not satisfied either prong of the *Strickland* standard and has not established a basis for disturbing the state court's adjudication of his claims.

### 3. Failure to Object

Petitioner also complains that his trial counsel failed to object to the prosecutor's misstatements of the law during voir dire, thereby, allowing the prosecutor to mislead the venire panel.  (Docket Entry No.1, page 15).  He further complains that trial counsel failed to object to improper and unethical conduct and arguments made by the prosecutor throughout the trial. (*Id.*).  Petitioner states no facts and presents no legal authority in support of these claims.

Accordingly, such claims are conclusory and subject to dismissal.  *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

## III. EVIDENTIARY HEARING

Petitioner seeks an evidentiary hearing because he alleges that the state habeas court's Findings of Fact and Conclusions of Law regarding his trial counsel's representation are not supported by the trial record.  (Docket Entries No.33, No.39).  Petitioner contends a hearing is necessary "[d]ue to the substantial factual questions of counsel's conduct, *i.e.*, failing to request a lesser instruction, and the waiving of petitioner's right to testify, an evidentiary hearing would aid the court to fully evaluate the circumstances surrounding the claims and aid the court in determining whether clear and convincing evidence rebuts the trial findings."  (Docket Entry No.39, page 5).

Upon review of the pleadings filed in this case and the proceedings held in state court as reflected in the state court records, the Court finds that an evidentiary hearing is unnecessary.  *Cf. Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987) (holding that "state court's hearing by affidavit was sufficient to invoke the presumption [of correctness]").  Federal law leaves "[t]he decision whether to conduct an evidentiary hearing . . . to the sound discretion of the district court[.]"  *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). "[W]here a district court has before it sufficient facts to make an informed decision regarding the merits of a claim, a district court does not abuse its discretion in refusing to grant an evidentiary hearing (even where no factual findings are explicitly made by any state court)."  *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000).  Accordingly, petitioner's request for an evidentiary hearing is DENIED.

<u>IV. CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons stated in the Court's Opinion on Dismissal, the Court has determined that petitioner is not entitled to a certificate of appealability.  Therefore, a certificate of appealability from this decision will be denied.

<u>IV. CONCLUSION</u>

Accordingly, the Court ORDERS the following:

1.      Petitioner's petition for writ of habeas corpus is DENIED and this habeas action is DISMISSED WITH PREJUDICE.

2.      A certificate of appealability is DENIED.

3.      Petitioner's request for an evidentiary hearing is DENIED.

4.      All other pending motions, if any, are DENIED.

The Clerk will provide copies to the parties.

SIGNED at Houston, Texas, this 25th day of March, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE